IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| MELVIA D. NASH, ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | 7:12-cv-2135-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM OPINION

## I.  Introduction

The plaintiff, Melvia D. Nash, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Ms. Nash timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Nash was forty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, has an eighth grade education, and took special education classes in every subject beginning in either the fifth or sixth grade. (Tr. at 41.) Ms. Nash cannot read, and her writing ability is limited to writing her own name. (Tr. at

42.) Her past work experiences include employment at a poultry plant and as a janitor. (Tr. at 49, 52.) Ms. Nash claims that she became disabled on February 25, 2008, due primarily to torn cartilage in her right leg, but also carpal tunnel in her hands and arthritis pain in her hands, legs, and back. (Tr. at 44, 45.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Nash meets the nondisability requirements for a period of disability and DIB, and was insured through the date of his decision. (Tr. at 23.) He further determined that Ms. Nash has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's chronic obstructive pulmonary disease (COPD), mild degenerative disc disease in the lower thoracic and lumbar spine,

degenerative joint disease in her right knee, limited intellectual functioning, arthritis and mild adjustment disorder with depressive mood are considered "severe" based on the requirements set forth in the regulations. (*Id*.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 25.) The ALJ did not find Ms. Nash's allegations to be totally credible, and he determined that she has the following RFC: "light work as defined in 20 CFR 404.1567(b) except that the claimant can do simple not complex tasks and maintain attention and concentration at those tasks for an eight-hour day provided customary breaks are given; and changes to the work setting are gradual, well explained, simple, and infrequent." (Tr. at 28.) Based on this RFC, the ALJ found that Ms. Nash is able to perform her past relevant work as a poultry plant worker. (Tr. at 30.) The ALJ concluded his findings by stating that Plaintiff "had not been under a 'disability,' as defined in the Social Security Act, from February 25, 2008, through the date of this decision." (Tr. at 31.)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**III. Discussion**

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons. First, Plaintiff contends the ALJ erred in finding that her limited intellectual functioning does not meet or equal Listing 12.05C Mental Retardation. (Doc. 9 at 5.) Second, Plaintiff contends that the ALJ's finding that she is capable of performing light work is not supported by substantial evidence. (*Id.*) Third, Plaintiff argues that the ALJ erred in finding that her participation in daily living activities disqualified her from disability benefits. (*Id.*)

    A.    Meeting or Equaling Listing 12.05C Mental Retardation

Plaintiff contends that her impairments either meet or equal listed impairment 12.05C and therefore she is disabled. (Doc. 12 at 5.) The plaintiff has the burden of proving that an impairment either meets or equals a listed impairment. *Wilkinson o/b/o Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration of requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir.

2002); *see* 20 C.F.R. § 404.1525(a)-(d). In addition, "to 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings'" *Id.; see* 20 C.F.R. § 404.1523(a).

Listing 12.05C requires "significantly subaverage general intellectual functioning" with the evidence supporting onset before the age of twenty-two. *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). In addition to the age requirement, the test of whether a plaintiff's disability meets the requirements of 12.05C is two pronged. *See Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985). The first prong is satisfied if the plaintiff can demonstrate she has an IQ between 60 and 69. *Id.* The second prong requires the plaintiff establish an additional mental or physical impairment significantly affecting the claimant's ability to work. *Id.* The additional impairment does not need to be "severe" by itself; rather, the impairment's effect on "a claimant's ability to perform 'basic work activities'" must be "more than slight or minimal." *Id.*

The ALJ found that Plaintiff's "impairment of limited intellectual functioning does not rise to listing level severity under listing 12.05C." (Tr. at 26.) One reason for reaching this conclusion was the ALJ's finding that Plaintiff failed to present sufficient evidence demonstrating onset before age twenty-two. Ms. Nash argues this conclusion

was incorrect. Plaintiff relies on *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), which stated that "there is a presumption that mental retardation is a condition that remains constant throughout life." In *Hodges*, the court found a claimant "need not present evidence that she manifested deficits in adaptive functioning prior to age twenty-two when she had offered evidence of low IQ test scores after age twenty-two." *Id.* Plaintiff thus argues that because she has a low IQ score of 67, there is no need for her to prove that her mental retardation began prior to age twenty-two.

Although *Hodges* creates a presumption that mental retardation is a condition that remains constant throughout life, such presumption is rebuttable. *See Hodges*, 276 F.3d at 1269 ("[T]he Commissioner may present evidence . . . to rebut this presumption . . . ."). The ALJ considered a variety of medical evidence in rebutting the *Hodges* presumption, including psychologist reports from Dr. Jerry Gragg and Dr. Steven Dobbs, as well as the evidence about Plaintiff's work history and her testimony about her daily living activities. (Tr. at 30.) Dr. Gragg noted on his evaluation that "although the results of the intellectual testing indicated an IQ level in the mildly mentally retarded range, there is not sufficient information to indicate that [Plaintiff] was diagnosed with retardation prior to age 18." (Tr. at 220.) Dr. Dobbs agreed, concluding that although Plaintiff claims she took special education classes beginning

in either the fifth or sixth grade, there were no school records proving that she took these classes. (Tr. at 234.) Thus, without evidence of an earlier diagnosis, and in consideration of Plaintiff's prior work activity, Ms. Nash should not be listed under 12.05. (*Id.*) In addition to the evidence from these doctors, the ALJ also noted that there is insufficient evidence demonstrating claimants dependency on others for her personal needs. The ALJ noted that Plaintiff has a significant 17 year work history with Marshall Durbin and Tyson Foods, and testified that she is able to drive, go shopping each month and do laundry. Based on the foregoing, the Court finds the ALJ provided sufficient reasoning to rebut the *Hodges* presumption.

Plaintiff also argues that the ALJ erred in finding that she does not satisfy the second prong of the test.[1] Specifically, Plaintiff submits that she has several additional physical or mental impairments affecting her ability to work, including carpal tunnel in her hands and arthritis all throughout her body (especially in her hands and legs). (Tr. at 44.)  At the hearing, Ms. Nash testified that the arthritis in her hands was so severe that it affected her ability to hold things. (Tr. at 45.) She claimed that the carpal tunnel would "catch in her hand" and then an object would fall out of her hand and onto the ground. (*Id.*) In regard to how often her pain occurred, Plaintiff testified that

---

[1] The first prong, having an IQ between 60 and 69, is not contested. Plaintiff received a full scale score of 67 on her IQ test, and therefore satisfied the first prong. (Tr. at 220.)

it was chronic and that it happened all the time throughout the day. (Tr. at 44.)

Since Plaintiff failed to establish the onset of her mental issues prior to age twenty-two, the analysis with respect to this argument is a moot point. Nonetheless, the Court finds the ALJ provided sufficient reasons for rejecting Plaintiff's testimony regarding the severity of her ailments. The ALJ rejected Plaintiff's testimony because it was both internally inconsistent and inconsistent with the medical records. For example, Dr. Gragg reported his opinion that "there do not seem to be any intellectual or psychological features that would interfere with [Plaintiff's] ability to function in a work environment." (Tr. at 221.) Indeed, the ALJ noted that no physician, whether treating or examining, has found that Plaintiff experiences disabling pain or limitations. (Tr. at 29.) Despite Plaintiff's claims that she suffers from various severe ailments, she testified at the hearing that she does not take any medication for them besides Ibuprofen. (Tr. at 44.) Finally, although Ms. Nash claims that the pain in her hand causes her to drop things on occasion, she is able to perform several daily activities using her hands, such as microwaving meals and driving herself to the store. (Tr. at 46.) Based on the medical records, Plaintiff's prior work record, and her daily activities, the ALJ properly determined that Plaintiff failed to prove that she had an additional impairment.

B.  No Substantial Evidence

Plaintiff asserts that the ALJ's finding that she is capable of performing light work is not supported by substantial evidence. Specifically, Ms. Nash alleges that the record does not contain an RFC assessment from a treating or examining physician which supports the ALJ's RFC determination. (Doc. 9 at 10.)

The essence of Plaintiff's argument is that the ALJ should have obtained a medical source statement (MSS) before making an RFC determination. Despite Plaintiff's arguments to the contrary, there is not a requirement that the ALJ consider a MSS when making an RFC finding. Rather the ALJ is only required to make sure that the record is complete, i.e., that the medical evidence and other evidence is sufficiently detailed to allow the ALJ to make a determination or decision about whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1512(e), 416.913(e). Indeed, nowhere do the regulations provide that a record is incomplete if a medical source does not provide a statement regarding the plaintiff's functional limitations, or if a medical source provides such a statement to which the ALJ properly accords little or no weight. In fact, the regulations provide just the opposite: "the lack of [a] medical source statement will not make the report incomplete." 20 C.F.R. § 404.1513(b)(6). Accordingly, Plaintiff's argument that the ALJ erred by failing to consider a MSS is

clearly unavailing.

The Court finds that the record contained sufficient evidence to enable the ALJ to make an appropriate RFC determination. With respect to Plaintiff's physical limitations, evidence in the record supports the ALJ's conclusion that Plaintiff can perform light work. In an Osteoporosis Questionnaire completed April 28, 2010, Ms. Nash denied having any of the illnesses she now claims exist: asthma, COPD, or arthritis. (Tr. at 266.) Additionally an examining physician, Dr. Samia Moizuddin, said that Ms. Nash had a normal range of motion in the cervical and lumbar spine, arms, knees, hips, and gait and station without abnormalities. (Tr. at 215). The lack of symptoms identified by these physicians, coupled with Plaintiff's testimony that she was only treating her illnesses with Ibuprofen is evidence that Plaintiff's problems do not restrict her from light work, such as her previous job at a poultry plant. (Tr. at 44.)

With respect to Plaintiff's mental impairments, the ALJ considered the medical opinions of both Dr. Gragg, a clinical psychologist who personally examined Ms. Nash, and Dr. Dobbs, a reviewing physician. Dr. Gragg concluded that Plaintiff "has adequate intellectual functioning to be able to understand, remember, and carry out instructions, at least simple instructions." (Tr. at 221.) He also stated "she seems best-suited for jobs that are repetitive in nature" and "there do not seem to be any

intellectual or psychological features that would interfere with her ability to function in a work environment." (*Id.*) Dr. Dobbs, after reviewing the medical evidence, agreed that Plaintiff suffered from no mental disability based on both her work history and Dr. Gragg's examination. (Tr. at 234.)

Finally the ALJ also took into account Plaintiff's daily activities. The fact that Ms. Nash sometimes cleans her home, occasionally drives to the store, and can operate the microwave were all taken into consideration. (Tr. at 46.) Plaintiff's daily activities, taken together with past medical records and the opinions of Dr. Dobbs and Dr. Gragg created sufficient evidence to support the ALJ's RFC determination.

"[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). *See also* C.F.R. § 404.1512(a) ("[Y]ou must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)…"); 20 C.F.R. § 404. 1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you were disabled."). Plaintiff has failed to satisfy her burden of establishing that she is disabled. Furthermore, the ALJ had sufficient evidence before him to make a fully informed disability determination. Accordingly, the Court finds

that the ALJ's decision regarding Plaintiff's RFC was supported by substantial evidence.

### C. Daily Activities Disqualifying from Disability

Plaintiff argues that the ALJ should not have considered her daily living activities when assessing the credibility of her subjective complaints. (Doc. 9 at 12.) Although daily living activities alone are not considered substantial support for discrediting complaints, they can show that the claimant's condition was not as limiting as she claims. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Plaintiff had the burden of either providing medical evidence that confirms the severity of her pain or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *See* 20 C.F.R. § 404.1529(a); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). It is the duty of the ALJ to evaluate the intensity and persistence of the plaintiff's alleged ailments and how they affect the plaintiff's ability to work. *See* 20 C.F.R. § 404.1529 (c), (d). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reason for doing so." *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995).

The ALJ found that Plaintiff's impairments could cause the alleged symptoms

that she was experiencing, but her statements in regard to the intensity, persistence, and limiting effect were not credible. (Tr. at 29.) The ALJ determined that Ms. Nash's daily activities (driving, doing laundry, using the microwave, and cleaning) were inconsistent with limiting effect she was alleging. (*Id.*) Although the ALJ considered Plaintiff's daily activities when discrediting her complaints, he did not rely on these activities in isolation. Instead, the ALJ also took into consideration the lack of medical evidence to support the severity of her alleged ailments as well as the opinions of Dr. Gragg and Dr. Dobbs. (*Id*). This Court finds that the ALJ's evaluation was consistent with the applicable law, and that there was substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible.

## IV.  Conclusion

Upon review of the administrative record, and considering all of Ms. Nash's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 7th day of August 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]